PIKE *v.* HOOD & *a.*

A deed bounding land by the bank or the thread of a brook which has two channels refers to the main channel, in the absence of evidence showing a different intention.

COVENANT, for breach of warranty of land conveyed by the defendants to the plaintiff. The defendants filed a bill in equity for a reformation of the deed. Facts found by the court.

The boundary is described in part as running on Millen's land " to a maple tree marked at the west bank of Long Pond brook so called, thence on the west bank of Long Pond brook so called (southerly) to a stump marked below the mill." The brook flows in a southerly direction, and in its natural state, within the limits referred to, had a channel through which all the water flowed in dry times, and another channel (which left it on the westerly side just below the maple tree and united with it twenty or thirty rods northerly of the stump) through which water flowed at higher stages. The island between the two channels contains four or five acres. Before the date of the deed dams had been erected across both channels a short distance above their junction. No water has flowed over the westerly dam except during freshets. The defendants never owned the island, and did not intend to convey it. The plaintiff claimed that the boundary is the west bank of the westerly channel, while the defendants claimed that it is the west bank of the easterly channel. Judgment was ordered for

the defendants in the action at law, and the bill in equity was dismissed.

*George R. Brown*, for the plaintiff.

*Albert S. Wait*, for the defendants.

CHASE, J. The land in controversy is the island, using the term in a general sense, and not the strip of land between the bank and the thread of the brook. The parties understand that the west bank of one of the channels is the boundary, but they differ as to which channel was intended. If their difference related to the question whether the bank or the thread of the stream was the line, a consideration of facts not appearing in the case might be necessary for a correct decision of it. The most of the water of the brook, and at times all of it, flows through the easterly channel. That is the main channel. The other is an auxiliary, which furnishes a passage for surplus water in times of freshet. One speaking of Long Pond brook, and having reference to one channel, would be understood to refer to the principal one. If reference to the other was intended, some qualifying word would be used to designate it.

Illustrations of a similar use of language are found in cases in which it is held that a boundary of land upon a non-navigable river includes islands situated nearer the bank formed by the land than the opposite bank, the principal channel being regarded as the river. *Claremont* v. *Carlton*, 2 N. H. 369; *Greenleaf* v. *Kilton*, 11 N. H. 530; *State* v. *Canterbury*, 28 N. H. 195, 219, 220, 221; *Nichols* v. *Suncook Manufacturing Company*, 34 N. H. 345, 349; *Kimball* v. *Schoff*, 40 N. H. 190; *Cessill* v. *State*, 40 Ark. 501; *Lunt* v. *Holland*, 14 Mass. 149; *Missouri* v. *Kentucky*, 11 Wall. 395. There is no evidence tending to show that the parties did not use the phrase "Long Pond brook" according to its ordinary signification when referring to one of its two branches. Under such circumstances it describes the main or easterly branch.

*Exceptions overruled.*

CARPENTER, J., did not sit: the others concurred.